**Mark WHALEY, Plaintiff,**

v.

**UNITED STATES of America, acting through The Central Intelligence Agency; The Central Intelligence Agency; George J. Tenet, Director of The Central Intelligence Agency; and Mutual of Omaha Insurance Company, Defendants.**

**No. 4:99CV3212.**

United States District Court,
D. Nebraska.

Feb. 4, 2000.

Vincent M. Powers, Kathleen M. Neary, Lincoln, NE, for plaintiff.

Sally R. Johnson, Assistant United States Attorney, Lincoln, NE, Gregory D. Barton, Harding, Schultz Law Firm, Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the defendants' motions to dismiss (filings 9, 15). For the reasons discussed below, I shall grant the motions.

The plaintiff, Mark Whaley ("Whaley"), a former employee of the Central Intelligence Agency, alleges in his amended complaint that the defendants violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and, except for the defendant Mutual of Omaha Insurance Company ("Mutual"), violated the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, by offering and approving an employee insurance plan which contained a 2–year limit on the payment of disability benefits as a result of a nervous or mental disorder.

The federal defendants, *i.e.*, the United States of America, acting through the Central Intelligence Agency, the Central Intelligence Agency, and George J. Tenet, Director of the Central Intelligence Agency, have moved to dismiss the ADA claim

(count I of the amended complaint) pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Whaley concedes in his brief that dismissal of the ADA claim against these defendants is appropriate.

Title I of the ADA, 42 U.S.C. § 12112(a), provides: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." A "covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The term "employer," however, does not include "the United States or a corporation wholly owned by the government of the United States." 42 U.S.C. § 12111(5)(B)(i). A suit against a federal agency or against an officer of a federal agency in his or her official capacity constitutes a suit against the United States, and is not permitted under the ADA. *See, e.g., Kemer v. Johnson,* 900 F.Supp. 677, 681 (S.D.N.Y.1995), *aff'd,* 101 F.3d 683 (2nd Cir.1996), *cert. denied,* 519 U.S. 985, 117 S.Ct. 441, 136 L.Ed.2d 338 (1996). Because the federal defendants are immune from suit under the ADA, count I of the amended complaint must be dismissed for lack of subject matter jurisdiction with respect to any claim made against these defendants.[1]

Mutual has also has moved to dismiss the ADA claim, pursuant to Fed.R.Civ.P. 12(b)(6). In this regard, it is alleged in the amended complaint that Mutual "adminis-

tered and/or offered and/or sold to in exchange for valuable consideration and/or extended to employees or former employees of the [federal defendants] a plan of disability insurance and/or plan of disability benefits and/or an income replacement plan which violated the Americans with Disabilities Act." Whaley alleges that he purchased an income replacement plan from Mutual and received benefits for approximately two years for a claim arising out of a mental or nervous disorder, after which time Mutual terminated the benefits. He alleges that benefits for persons suffering from illnesses or disabilities other than mental or nervous disorders were not so terminated.

Five United States Courts of Appeals have considered discrimination claims such as this and have uniformly held that disability benefit caps for mental or nervous disorders do not violate the ADA. *See Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104 (9th Cir.2000) (an employer offering a group disability insurance policy as a fringe benefit that gives more benefits for physical disabilities than for mental disabilities does not violate Titles I or III of the ADA); *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1101–02 (10th Cir.1999) (the ADA does not prohibit an employer from operating a long-term disability benefits plan which distinguishes between physical and mental disabilities); *Lewis v. Kmart Corp.,* 180 F.3d 166, 169–70 (4th Cir.1999) (Title I of the ADA does not require a long-term disability plan that is sponsored by a private employer to provide the same level of benefits for mental and physical disabilities); *Rogers v. DHEC,* 174 F.3d 431, 432–36 (4th Cir.1999) (Title II of the ADA does not require a long-term disability plan that is sponsored

---

**1.** The amended complaint does not indicate that the CIA Director is being sued in his individual capacity, nor may this be done. *See Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996) (holding that the ADA does not provide for individual liability, only employer liability); U.S. *EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1279–82 (7th Cir.1995) (holding that individuals who

do not independently meet the ADA's definition of "employer" cannot be held liable). *Cf. Lenhardt v. Basic Institute of Technology, Inc.,* 55 F.3d 377, 380–81 (8th Cir.1995) (holding that language in Missouri's Human Rights Act, which is similar to the ADA, does not provide a cause of action against individual supervisors and managers).

by a public employer to provide the same level of benefits for mental and physical disabilities); *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 608–10 (3rd Cir.1998) (disparity between benefits for mental and physical disabilities does not support a finding of discrimination under Title I of the ADA); *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1015–19 (6th Cir. 1997) (the ADA does not prohibit an employer from providing to its employees a long-term disability plan issued by an insurance company which contains longer benefits for employees who become disabled due to a physical illness than for those who become disabled due to a mental illness); *EEOC v. CNA Ins. Companies*, 96 F.3d 1039, 1044–45 (7th Cir.1996) (distinction in long-term disability plan between mental health benefits and other benefits was not discriminatory under Title I of the ADA).

The Eighth Circuit has not addressed this precise issue, but it has held as a general proposition that insurance distinctions that apply equally to all insured employees are not "disability-based." In *Krauel v. Iowa Methodist Medical Center*, 95 F.3d 674, 677–78 (8th Cir.1996), in holding that an employer's denial of insurance coverage for fertility treatments was not discriminatory under the ADA, the Court stated:

> "A term or provision is 'disability-based' if it singles out a particular disability (*e.g.*, deafness, AIDS, schizophrenia), a discrete group of disabilities (*e.g.*, cancers, muscular dystrophies, kidney diseases), or disability in general (*e.g.*, non-coverage of all conditions that substantially limit a major life activity)." EEOC: Interim Enforcement Guidance on Application of ADA to Health Insurance, (June 8, 1993), *reprinted in* Fair. Empl.Prac.Man. 405:7115, 7118(BNA). Insurance distinctions that apply equally to all insured employees, that is, to individuals with disabilities and to those who are not disabled, do not discriminate on the basis of disability. *Id.* at 405:7117.
>
> For example, a feature of some employer provided health insurance

plans is a distinction between the benefits provided for the treatment of physical conditions on the one hand, and the benefits provided for the treatment of "mental/nervous" conditions on the other. Typically, a lower level of benefits is provided for the treatment of mental/nervous conditions than is provided for the treatment of physical conditions. Similarly, some health insurance plans provide fewer benefits for "eye care" than for other physical conditions. Such broad distinctions which apply to the treatment of a multitude of dissimilar conditions and which constrain individuals both with and without disabilities, are not distinctions based on disability. Consequently, although such distinctions may have a greater impact on certain individuals with disabilities, they do not intentionally discriminate on the basis of disability and do not violate the ADA.

*Id.* at 405:7118 (footnote omitted).

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), allegations in the complaint must be viewed in the light most favorable to the Plaintiff. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a Plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir.1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

On the basis of the Eighth Circuit's holding in *Krauel* and the clear weight of authority from the other circuits, it is ap-

parent that Whaley cannot state a claim under the ADA. His argument that Mutual must show some justification for the differential treatment of physical and mental disabilities finds no support in *Krauel* or in the opinions of the other Courts of Appeals.

The single case upon which Whaley relies, *Winslow v. IDS Life Ins. Co.*, 29 F.Supp.2d 557 (D.Minn.1998), is readily distinguishable. That case involved a determination under the insurance "safe harbor" provision, 42 U.S.C. § 12201(c), of whether the defendant insurance company's practice of denying disability insurance to applicants who had recently received mental health treatment was "based on, or not inconsistent with state law." The Minnesota statute in question specifically required actuarial projections, claims experience, and other data to support insurance eligibility criteria.[2] Finding that a genuine issue of material fact existed as to whether this requirement was satisfied, the district court denied the insurance company's motion for summary judgment. Unlike *Winslow*, the present case does not involve a disability-based distinction that Mutual must attempt to justify under state law, nor, obviously, does it involve the law of Minnesota.[3]

The district court in *Winslow* did not address the issue under the safe harbor provision of whether the eligibility criteria were being used as a "subterfuge" to evade the purposes of Titles I and III of the ADA. It has been held, however, that the "subterfuge" qualification to the safe harbor provision does not require an insurance company to justify its policy coverage whenever a plaintiff alleges discrimination. *See Ford v. Schering-Plough Corp.*, *supra*,

145 F.3d at 611 (relying on *Public Employees Retirement System v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), in which the Supreme Court interpreted a comparable provision in the Age Discrimination in Employment Act). *See, also, Krauel v. Iowa Methodist Medical Center, supra*, 95 F.3d at 678–79 (applying *Betts* definition of "subterfuge" to the ADA); *Modderno v. King*, 82 F.3d 1059, 1064–65 (D.C.Cir.1996), *cert. denied*, 519 U.S. 1094, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). *Accord, Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir.1999) (holding that capping medical insurance policy benefits for AIDS patients did not violate the ADA even though the insurance company stipulated that it could not show that the caps were based on sound actuarial principles or claims experience), *cert. denied*, —— U.S. ——, 120 S.Ct. 845, 145 L.Ed.2d 714 (2000). *Contra, World Ins. Co. v. Branch*, 966 F.Supp. 1203 (N.D.Ga. 1997), (holding that cap on AIDS-related benefits violated the ADA where insurance company failed to demonstrate that the cap was based on sound actuarial principles, reasonably anticipated claims experience, or bona bide risk classification), *vacated as moot*, 156 F.3d 1142 (11th Cir. 1998).

In concluding that Whaley's action against Mutual should be dismissed, I make no determination as to whether the income replacement plan that Whaley purchased through his CIA employment is a "place of public accommodation" under Title III of the ADA, nor whether Mutual is a "covered entity" or Whaley is a "qualified individual with a disability" under Title I of the ADA. I simply find that the cap

---

**2.** Discrimination based on the use of eligibility criteria is also the subject of Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(i), which Whaley cites in support of his argument. That section defines discrimination to include "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations,

unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered."

**3.** The broad-based distinction at issue in the present case is "not inconsistent with" Neb. Rev.Stat. § 44–749 (Reissue 1998), which generally provides that it is not unfair discrimination for an insurer to provide different benefits under a group plan of insurance.

on benefits for mental or nervous disorders is not discriminatory.

What has been stated above also effectively disposes of count II of the amended complaint, in which Whaley alleges that the federal defendants violated the Rehabilitation Act by "approving a discriminatory plan of insurance and/or contracting for a plan of insurance which discriminated against qualified individuals and/or allowing a discriminatory benefits package to be offered to the Defendant's employees and/or failing to protect the rights, privileges and/or terms of employment and related benefits of qualified persons with disabilities." I find that the federal defendants [4] are entitled to dismissal of this claim under Rule 12(b)(6).

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." The standards for determining whether this section has been violated are the same standards that are applied under the ADA. *See* 29 U.S.C. § 794(d). Two Supreme Court decisions interpreting the Rehabilitation Act, *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), and *Traynor v. Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), have also provided the basis for most of the ADA cases discussed above. *See, also, Modderno v. King, supra,* 82 F.3d at 1060–62 (holding that $75,-000 lifetime maximum for mental health benefits did not violate § 504 of the Rehabilitation Act). Count II of the amended complaint therefore does not state a claim upon which relief can be granted.

IT IS ORDERED that:

1) Mutual's motion to dismiss (filing 9) is granted, and the amended complaint (count I) is dismissed for failure to state a claim upon which relief can be granted against this defendant; and

2) the federal defendants' motion to dismiss (filing 15) is granted, and the amended complaint is dismissed for lack of subject matter jurisdiction (count I) and for failure to state a claim upon which relief can be granted (count II) against each of these defendants.

## JUDGMENT

Pursuant to the memorandum and order previously filed this date:

(1) Final judgment is entered in favor of the United States of America, acting through the Central Intelligence Agency, the Central Intelligence Agency, and George J. Tenet, Director of the Central Intelligence Agency, Defendants, and against Plaintiff on count I of Plaintiff's amended complaint, providing that Plaintiff shall take nothing thereon as against said Defendants, and count I of Plaintiff's amended complaint is dismissed with prejudice for lack of subject matter jurisdiction for the reason that said Defendants are immune from suit thereon; and

(2) Final judgment is entered in favor of the United States of America, acting through the Central Intelligence Agency, the Central Intelligence Agency, George J. Tenet, Director of the Central Intelligence Agency, and Mutual of Omaha Insurance Company, Defendants, and against Plaintiff on Plaintiff's amended complaint, providing that Plaintiff shall take nothing thereon as against said Defendants, and Plaintiff's amended complaint in its entirety (including counts I and II) is dismissed with prejudice for failure to state a claim

---

**4.** Whaley states in his brief that he does not oppose the dismissal of the United States and the CIA as defendants. A suit under the Rehabilitation Act may be brought only against the head of the employing agency in his or her official capacity. *See Morgan v. United States Postal Service,* 798 F.2d 1162, 1165 n. 3 (8th Cir.1986).

upon which relief can be granted as to all Defendants.